# The Commmonwealth *ex rel.* The Attorney-General *versus* Kilgore.

1. The word "and" in sect. 26 of the schedule to the constitution of 1873 cannot be read " or."

2. It is only one in office *at the time* the new constitution went into effect *and* whose term continued *till after the first election* thereunder, that can hold office till the expiration of his term under sect. 26 of the schedule.

3. K. was elected county treasurer in 1871, his term of office to expire on the first Monday of March.1874 ; he was re-elected in October 1873, to hold office from the first Monday in March 1874 : *Held*, that when the new constitution went into effect, on January 1st 1874, K. was in office as of his *first term*, and therefore he could not hold office under his re-election till the expiration of his second term, by virtue of sect. 26 of the schedule.

October 10th 1876. Before Agnew, C. J., Sharswood, Mercur, Gordon, Paxson and Woodward, JJ. Williams, J., absent.

[Commonwealth v. Kilgore.]

Error to the Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1876, No. 146.

This was a *quo warranto* against Samuel Kilgore, commanding him to show by what authority he claimed to exercise the office of treasurer of Allegheny county.

The defendant's answer set forth that in October 1871 he was elected county treasurer for a term of two years, to compute from the first Monday of March 1872 (according to the provisions of a special act relating to the office of the treasurer of Allegheny county, approved March 29th 1867); that in October 1873 he was re-elected for another term of two years, to compute from the first Monday of March 1874; that by virtue of his said election and his commission he was entitled to hold his office until his successor had been duly qualified, and that no such successor had been so qualified, &c.; and therefore that he was entitled to hold his office until the first Monday of January 1877, and until his successor should be duly qualified.

The Commonwealth filed a replication, setting forth that at the general election held November 1875 James G. Murray was elected county treasurer; that he had given bonds, had taken the oath of office and was duly commissioned by the governor to hold the office for three years from the first Monday of January 1876; and that the defendant's term of office had expired. It also denied that the defendant was entitled to hold the office till the first Monday of January 1877.

To this replication the defendant filed a rejoinder alleging that the election held in November 1875 was unauthorized by law, and therefore illegal and void, and that Murray was ineligible to the office of county treasurer at the time of that election, because he then held the office of county commissioner.

To this rejoinder the Commonwealth filed a general demurrer.

The court below entered judgment on this demurrer for the defendant, on the ground that Murray was ineligible to the office. No written opinion was filed.

The Commonwealth took this writ of error, assigning for error the judgment of the court in overruling the demurrer.

The Attorney-General, *G. Shiras, Jr.,* and *M. W. Acheson,* for the Commonwealth.—At the time when the new constitution went into effect Kilgore was in office, as of his first term, and sect. 26 of the schedule did not apply to his case. Kilgore cannot raise here the question of Murray's ineligibility : Commonwealth *v.* Cluley, 6 P. F. Smith 270.

*G. P. Hamilton* and *A. M. Brown,* contrà.

Mr. Chief Justice AGNEW delivered the opinion of the court, October 23d 1876.

[Commonwealth *v.* Kilgore.]

The position of the counsel of Samuel Kilgore is, that he was *in office*, as the treasurer of Allegheny county, at the time of the adoption of the new constitution, *and* at the first election under it; and was therefore, under the 26th section of the schedule, continued in office from the first Monday of March 1874 for two years ending March 1876, and thereafter until his successor should be duly qualified.    This would continue his term of the office until the first Monday of January 1877.    To test the correctness of this position we must examine the facts before we can apply the provision of the schedule.    Kilgore was first elected at the general election of 1871, and, according to the law relating to Allegheny county, his term of two years began on the first Monday of March 1872, and consequently expired at the same time in 1874.    He was, therefore, in office at the time of the adoption of the new constitution, under his election in 1871, and not under the election of 1873.    But the new constitution took effect, according to the schedule, on the first day of January 1874, before his second term began, and by the 2d section of the 14th article, county treasurers, as *county officers*, "shall be elected at the general elections and hold their offices for the term of three years, beginning on the first Monday of January next after their election, and until their successors shall be duly quali-. fied; all vacancies not otherwise provided for shall be filled in such manner as may be provided by law."    The term of Kilgore having expired on the first Monday of March 1874, after the constitution took effect, it is evident the office became open to the operation of the new constitution, before the first general election under it, in 1874, when an election to fill the office under the new constitution could be held, unless we read the word "and" *or* in the 26th section of the schedule.    The words of that section are these: "All persons in office in this Commonwealth at the time of the adoption of this constitution, *and* at the first election under it, shall hold their respective offices until the term for which they have been elected or appointed shall expire, and until their successors shall be duly qualified, unless otherwise provided in this constitution."    That *and* may be read *or* when it is evident that the intent requires it is admitted; but that it ought not to be so read in this instance is manifest.    No necessary intent requires it.    The constitution is the primordial act of the people, whose sovereign will must take effect when it can, while the schedule is not intended to supersede or supplant it, but to adapt it to the new order of things.    But for the schedule the new order would take effect on the instant of adoption, and all officers under the old order must give way.    The schedule bridges over the intervening chasm between the two orders, so as to make easy the passage from one to the other.    If a term of office be not existing when the new constitution is capable of filling it, it is the right of the people, and their sovereign will, as ordained in the new frame of government, to fill it under that new

[Commonwealth *v.* Kilgore.]

frame. But if the term of office is existing at the time of adoption, and continues until after the first election, so that it cannot be filled at that election without injustice to the officer and probably without prejudice to the public interest, it is reasonable that the term should be continued until it would have expired by efflux of its time. Hence the schedule so provides. But if the term expire before the first election, the office becomes open to the operation of the new constitution, because it is then in the power of the people to fill it without prejudice, and the rights of the people and their will, as expressed in the 2d section of the 14th article, must be enforced. These are that the county treasurer shall be elected at the general election, that his term shall begin on the first Monday of January next after the election, and that it shall continue for a period of three years, instead of beginning in the following March and continuing only two years. There is no reason, therefore, for changing the express language of the 26th section of the schedule, which, as it now stands, enforces the rights and executes the will of the people, and thereby gives the new constitution its proper, early and symmetrical effect. The county treasurer is but one of the numerous class of county officers enumerated in the 1st section of the 14th article, while the 2d section was intended to produce uniformity, so far as possible, by putting them all on the same footing.

It is urged that Kilgore was re-elected in 1873, and therefore would have been in office at the first election under the new constitution in 1874. But he was not in office under the election of 1873, on the 1st of January 1874, when the schedule put the constitution into effect; and therefore he did not fall within the terms of the 26th section of the schedule. He was then in office under a former election; and in order to support his claim to hold the office under the election of 1873, we must say that one not in office at the adoption of the constitution shall *afterwards take office* in order to be *in office* at the time of the first election. But this, we have seen, is unreasonable and without necessity, and postpones the operation of the constitution, contrary to the expressed will of the people that it shall take effect on the first Monday of January 1874, and their express provision that this operation shall be postponed only when there is a term of office existing at the time of adoption and also at the time of the first election. The postponement of the operation of the new frame of government in this respect would, by the defendant's interpretation, defer the right of the people to fill the office under this frame until the first Monday of January 1877. The election of 1873 was not under the new constitution, and consequently gave no right to the office contrary to its intent. Its adoption subsequently swept away all right to office unless saved by the schedule. In such a case there can be no appeal to equitable considerations not provided for in the schedule. The sovereign will of the people, expressed in a primordial act, cannot

[Commonwealth *v.* Kilgore.]

be stayed by a mere election under a former frame of government, unless it has been their pleasure to permit it by a temporary provision to save it. Then on what ground of reason or intention shall we change the language of the schedule by reading " and" *or?* " And" harmonizes the constitution and the schedule, and gives effect to the rights of the people; " or" postpones their operation and robs the people of their right.

By a misconception of the effect of the schedule, no election took place in 1874, and a vacancy thereby occurred. But the omission to elect cannot change the meaning of the constitution. Under the Act of 15th May 1874, § 1, the vacancy could have been filled by the governor until another general election; and if not filled, it is worthy of consideration whether the true intent of the schedule would not have continued one in office at the adoption of the constitution until an election in 1875 should take place to fill the office. Such an interpretation would be in aid of the constitution and not hostile to it. But of this we give no opinion.

The election of James G. Murray being the first that took place under the new constitution, we perceive nothing to prevent his contesting the illegal tenure of Mr. Kilgore, with the consent and intervention of the attorney-general, who himself sued out this writ of quo warranto. If Mr. Murray was ineligible at the time of his election to hold the office when elected, the remedy is not by suffering one illegally in office to continue in it. When Murray's right to it shall be contested by the Commonwealth, through her proper officer, it will be time to inquire into his ineligibility. Judgment of ouster must be given against this defendant.

And now, October 23d 1876, it is ordered and adjudged by the court, that the judgment of the Court of Common Pleas be reversed and set aside, and that the defendant, Samuel Kilgore, be ousted and altogether excluded from the office of treasurer of the county of Allegheny, and that the Commonwealth do recover from the said defendant her costs in this behalf expended and incurred.